UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LANCE H.,

    *Plaintiff*,

        v.

FRANK BISIGNANO, Commissioner of Social Security,

    *Defendant*.

Case No. 1:23-cv-16944

Hon. Beth W. Jantz

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Lance H.'s[1] application for Disability Insurance Benefits (DIB). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. 26.) For the reasons stated below, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 16) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 21) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**BACKGROUND**

On December 21, 2020, Plaintiff Lance H. filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning December 15, 2018. (R. 17.) The claim was denied initially on December 6, 2021, and upon reconsideration on June 16, 2022. (*Id.*) Plaintiff then requested a hearing, which was held in-person on January 13, 2023, before Administrative Law

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by his first name and the first initial of his last name.

Judge Michael Hellman. (*Id.* at 48–126.) Plaintiff appeared and testified, along with a vocational expert, Stephanee A. Leech. (*Id.*) On March 30, 2023, the ALJ issued his decision denying benefits. (*Id.* at 17–37.)

In his written decision, the ALJ applied the five-step sequential evaluation process for Title II claims. (*Id.*) At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since December 15, 2018, the alleged onset date. (*Id.* at 20–21.) Later in this section, the ALJ comes to a slightly different conclusion, finding that Plaintiff had engaged in substantial gainful activity since July 11, 2022, but would nevertheless "continu[e] through the remaining Steps [sic] of the sequential evaluation, given [Plaintiff's] alleged onset date of disability of December 15, 2018, that precedes July 2022." (*Id.* at 21.) At step two, the ALJ found that Plaintiff had the following severe impairments: congenital anomaly of the left hand, osteoarthritis, hypertension with one episode of urgency, supraventricular tachycardia, post-nephrectomy/kidney transplant, and obesity. (*Id.* at 21–22.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 23.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional limitations, including postural and hazard limitations, weight limitations (can lift 10 pounds occasionally, and lift or carry less than 5 pounds frequently), movement limitations (can stand and/or walk for approximately two hours out of an eight-hour workday, and can sit for six hours with normal breaks), and strict limitations related to his left upper extremity. (*Id.* at 23–33.) At step four, relying on vocational expert testimony, the ALJ found Plaintiff could perform his past relevant work as an account manager, territory manager, consumer consultant, and pre-sales supervisor as generally performed. (*Id.* at 33–36.) The ALJ therefore concluded that Plaintiff was not disabled from December 15, 2018 through the date of the decision. (*Id.* at 36.)

Plaintiff sought review by the Appeals Council, and his request for review was denied, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–3.) Plaintiff challenges the Commissioner's final decision denying his Title II application for DIB, and the matter is before this Court for judicial review. (*See generally* Dkt. 1.)

## DISCUSSION

### I.      Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

### II.     The ALJ's Evaluation of Dr. Tan's Treating-Source Opinions Was Insufficient

Plaintiff raises four principal challenges to the ALJ's decision. Plaintiff contends that the ALJ erred in his assessment by: (1) insufficiently evaluating the opinion of Plaintiff's treating doctor; (2) failing to explain the evidence underlying the basis of the RFC; (3) insufficiently

explaining his conclusions regarding Plaintiff's subjective symptoms; and (4) not basing his step 4 finding on substantial evidence. As discussed below, because the ALJ's insufficient analysis of Plaintiff's treating doctor's opinion alone warrants remand, the Court will not address, and thus makes no ruling on, Plaintiff's other three arguments.

For claims filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this framework, medical opinions from treating sources do not receive "controlling weight." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (citing parallel section 20 C.F.R. § 416.920c). Instead, the ALJ evaluates the *persuasiveness* of each medical opinion using the factors set out in § 404.1520c(c). *See id.* In determining persuasiveness, the ALJ considers: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant (including length of the treatment relationship, frequency of examinations, purpose and extent of treatment, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). Although all five factors must be considered, the regulation identifies supportability and consistency as the "most important" factors. *Albert*, 34 F.4th at 614.

"Supportability" focuses on the extent to which the medical source supports the opinion with relevant objective medical evidence and explanation. *Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025) (citing parallel section 20 C.F.R. § 416.920c). The more the evidence and explanation support the opinion, the more persuasive the opinion is. *Id.* "Consistency" addresses how consistent the medical opinion is with other evidence in the record, such that the more consistent the opinion is with the other medical evidence, the more persuasive it is. *Id.* Because supportability and consistency are the most important factors, the ALJ must explain how those two factors were

4

considered in the decision. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the remaining factors were considered. *See id.*; *Albert*, 34 F.4th at 614.

Plaintiff challenges the ALJ's assessment of the opinion of his treating physician, Dr. William Tan, arguing that the ALJ's persuasiveness evaluation was insufficient. Specifically, Plaintiff contends that the ALJ failed to properly evaluate supportability and consistency as required by § 404.1520c. Plaintiff takes issue with the ALJ's findings that: (1) Dr. Tan's opinion was internally inconsistent because Dr. Tan opined both that Plaintiff "cannot lift and carry any weight for 2/3 of an eight-hour workday" and that Plaintiff "can lift five pounds 1/3 of the day;" (2) although Dr. Tan noted "trace edema," there was otherwise no mention of "difficulty with station or mobility" to support a limitation of standing or walking for only "30 minutes at a time and a total of one hour in an eight-hour workday;" (3) Dr. Tan's opinion was inconsistent with Plaintiff's hand-pain treatment, which consisted only of over-the-counter Tylenol and no bracing; and (4) Dr. Tan's instruction that Plaintiff elevate his legs at the end of the day functioned more as a treatment recommendation than a medical opinion. (R. 31; Dkt. 16 at 3–9.)

The Commissioner responds to Plaintiff's first argument by conceding that it is "[t]rue" that Dr. Tan's opinion is not inconsistent, but arguing that the ALJ cited other valid reasons for finding the opinion unsupported. (Dkt. 22 at 22.) For example, other than Dr. Tan's finding of "mild enlargement of the joint in one finger," the Commissioner asserts there was nothing else relating to Plaintiff's right hand. (*Id.*) The Commissioner also argues that Dr. Tan's opinion is inconsistent with Dr. Christen Tibbs's physical examination findings and with "the total lack of recommended treatment." (*Id.*) As to Plaintiff's second argument, the Commissioner acknowledges that "Dr. Tan's findings of trace edema provided support for some limitation in standing and walking," but maintains that the ALJ explained that the opinion was inconsistent with other

evidence. (*Id.*) As to Plaintiff's third argument, the Commissioner argues that Plaintiff is improperly asking the Court to reweigh the evidence and is ignoring his burden of proof. (*Id.* at 23.) According to the Commissioner, the facts do not support Plaintiff's position because Plaintiff's short-term use of stronger pain-relieving medication was for recovery from a procedure rather than for hand pain, and if the brace caused Plaintiff pain, Dr. Tan would have recommended some other form of treatment. (*Id.*) Finally, the Commissioner argues that Plaintiff's fourth argument amounts to nit-picking the ALJ's discussion and does not show that the ALJ should have viewed Dr. Tan's statement as supporting disability or affecting Plaintiff's ability to function during a workday. (*Id.* at 21.) In particular, no provider "deemed it necessary to recommend treatment for alleged leg swelling until May 2022," when Dr. Tan instructed Plaintiff to elevate his legs. (*Id.*)

At the outset, an ALJ must do more than summarize evidence and announce conclusions. The ALJ must evaluate medical opinions primarily through the factors of supportability and consistency and must explain how those factors were considered. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023) ("Section 404.1520c(c) requires ALJs to explicitly explain why particular medical opinions are consistent with the record as a whole."). The explanation must build a logical bridge from the evidence to the conclusion and be sufficient to permit meaningful judicial review. *See Warnell*, 97 F.4th at 1054. It is not enough to label an opinion "unsupported" or "inconsistent" without explaining why, nor may the ALJ rely on a selective discussion of the record. 20 C.F.R. § 404.1520c(b)(2); *see Bakke*, 62 F.4th at 1067.

The Court begins with Dr. Tan's lifting and carrying limitations. The ALJ discounted the opinion in part because he found it "internally inconsistent," reasoning that Dr. Tan both stated Plaintiff could not lift or carry any weight for two-thirds of the workday and also stated Plaintiff could lift five pounds for one-third of the day. (R. 32, 694.) But those statements are not

6

inconsistent. Read together, they describe different capacities over different portions of the work-day, not contradictory limitations. Indeed, the Commissioner concedes as much in his response. (Dkt. 22 at 22.) Because the ALJ's analysis rested in part on a mistaken premise, that rationale cannot support the rejection of Dr. Tan's lifting and carrying restrictions. *Francisco M.-L v. Ki-jakazi*, No. 21 C 3524, 2022 U.S. Dist. LEXIS 177319, at *17–18 (N.D. Ill. Sep. 29, 2022) (finding that the ALJ committed factual error in determining that the record lacked evidence of abnormal-ities in attention levels where other portions documented concentration, attention, and memory issues); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("[R]eversal and remand may be required . . . if the ALJ based the decision on serious factual mistakes or omissions.").

The Commissioner's harmless-error argument does not fill the gap. The Commissioner attempts to excuse this factual error by stating that "the ALJ identified other valid reasons for finding Dr. Tan's opinion not supported." (Dkt. 22 at 22.) But § 404.1520c required the ALJ to explain in his decision why Dr. Tan's lifting and carrying limitations were unsupported or incon-sistent with the evidence. 20 C.F.R. § 404.1520c(b)(2); *see Bakke*, 62 F.4th at 1067. The Court reviews the ALJ's stated reasoning, not post-hoc rationalizations offered in litigation. *See Hejna v. Bisignano*, No. 19-cv-5998, 2025 U.S. Dist. LEXIS 168874, at *4 (N.D. Ill. Aug. 29, 2025). Even setting aside the ALJ's erroneous "internal inconsistency" rationale, the remaining discus-sion by the ALJ does not adequately connect the cited evidence to the rejection of Dr. Tan's as-sessed limitations. The ALJ stated that Dr. Tan's opinion was "inconsistent with the State Agency assessments, which were in good part reliant on consultative examiner Dr. Tibbs's findings relat-ing to the use of the hands." (R. 32.) But that does not adequately ***explain why*** the opinion was inconsistent with this evidence. On this record, and without any corresponding explanation, the Court cannot conclude that the ALJ's error was harmless. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th

7

Cir. 2010) ("[T]he fact that [an administrative law judge], had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

Nor does the record support the ALJ's conclusion on the consistency element. Consultative examiner Dr. Tibbs documented right-hand deficits, including reduced grip strength and severe difficulty with buttoning and zipping. (R. 26, 564–65.) Those findings are directly relevant to whether Dr. Tan's limitations are consistent with other medical evidence. Yet the ALJ did not address how those findings factored into the analysis. (*See id.* at 32.) An ALJ may not ignore evidence that undermines his conclusion. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (an ALJ is not permitted to ignore expert opinions to arrive at their own interpretation of medical evidence). By suggesting but not explaining how Dr. Tibbs's findings do not support the consistency of Dr. Tan's opinion, and also while neglecting to discuss other pertinent parts of the record, the ALJ's consistency discussion is insufficient.

The same problem appears in the ALJ's evaluation of Dr. Tan's right-hand limitations. Dr. Tan opined that Plaintiff had significant right-hand limitations, including very limited grasping and fine manipulation, based on arthritis and chronic pain in the right second metacarpophalangeal joint, which Dr. Tan described as mildly enlarged. (R. 32, 694–97.) The ALJ rejected these limitations as unpersuasive, asserting that they were unsupported by Dr. Tan's own clinical observations and inconsistent with the record. (*Id.* at 32.) But the decision does not grapple with evidence the ALJ himself acknowledged. Dr. Tan's questionnaire identifies a right-hand abnormality in the form of mild enlargement of the affected joint. (*Id.* at 32, 695.) Moreover, the ALJ found, (R. 21), and the Commissioner also acknowledges, (Dkt. 22 at 10), that Plaintiff suffered from severe osteoarthritis of his right hand. The ALJ's decision does not explain why this documented

abnormality, together with the significance of Dr. Tan's treating relationship, fails to support the assessed limitations. Without that reasoning, the Court cannot follow how the ALJ evaluated supportability. *See Bakke*, 62 F.4th at 1067.

Additionally, the ALJ's discussion of Dr. Tan's standing and walking limitations suffers from a similar problem. Dr. Tan opined that Plaintiff could stand or walk for only 30 minutes at a time and one hour total in an eight-hour workday. (R. 32, 694.) The ALJ gave this limitation some persuasive value on the basis of "trace edema observations," but relied on earlier normal gait observations[2] and Plaintiff's daily activities (including cooking, shopping, involvement with his daughter, and attending parent-teacher conferences) to reject the full limitation. (*Id.* at 32.) The ALJ ultimately assessed a residual functional capacity allowing two hours of standing or walking. (*Id.* at 23.) But the decision does not explain how those daily activities are inconsistent with Dr. Tan's one-hour total limitation. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (the ALJ must explain inconsistencies between a Plaintiff's activities of daily living (interrupted by rest) and the medical evidence). Activities of daily living may be performed intermittently or with breaks, and the ALJ did not address that distinction. *Id.*; *see Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("[M]inimal daily activities . . . do not establish that a person is capable of engaging

---

[2] The ALJ's decision also fails to explain why "no gait or station abnormalities" is inconsistent with limitations in standing and walking. (R. 32.) A claimant may be able to walk or stand normally during a brief medical examination yet still be unable to sustain those activities over longer periods. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (ability to walk 50 feet without a cane during an office visit did not show ability to stand for six hours). The ALJ's own analysis reinforces this point. The ALJ expressly found the State Agency medical consultants' opinions "not entirely consistent with and supported by hearing level evidence of degenerative changes in the right knee and right hip and of the trace edema in the lower extremities that Dr. Tan observed." (R. 31.) Thus, while the ALJ deemed the State Agency opinions "mostly persuasive" as to other aspects of Plaintiff's residual functional capacity, he declined to adopt them with respect to standing and walking, recognizing that those functions had been affected by the cited clinical and diagnostic abnormalities. (*Id.*)

in substantial physical activity."); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("[Plaintiff] *must* take care of her children . . . and the choice may impel her to heroic efforts."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Without explaining how the cited activities translate into the ability to sustain standing or walking over a full workday, the ALJ has not built the required logical bridge. *See Warnell*, 97 F.4th at 1054.

Ultimately, despite the Commissioner's assertions to the contrary, (Dkt. 22 at 23–24), the issue here is not whether the Court would weigh the evidence differently than the ALJ. Rather, the issue is that the ALJ did not perform and explain the analysis required by § 404.1520c. The ALJ decided to reject, or only partially credit, the specific functional limitations opined by Plaintiff's treating physician, yet failed to adequately explain his reasons for doing so. Remand is therefore required because the Court cannot meaningfully review the path of the ALJ's reasoning. *See Warnell*, 97 F.4th at 1054.

Nor can the ALJ's defective analysis be deemed harmless, as the ALJ denied the claim at step four, which relied on Plaintiff's RFC. A proper evaluation of Dr. Tan's opinion could alter the limitations included in the RFC and, in turn, the jobs available to Plaintiff under that RFC. The Court therefore cannot conclude with great confidence that the ALJ would reach the same result on remand. *Kennedy v. Kijakazi*, No. 22-2258, 2023 U.S. App. LEXIS 3503, at *10 (7th Cir. Feb. 14, 2023) (for an error to be harmless, a court must have "great confidence" that new evidence would create "no reasonable probability of a different outcome" on remand).

To be clear, in concluding that this issue requires remand, the Court makes no determination as to whether the limitations Dr. Tan opines to are or are not sufficient to support a different

finding. The Court holds only that the ALJ failed to sufficiently articulate and explain his conclusion as to this evidence, and that this deficiency requires remand. In light of the Court's decision to remand on that issue, the Court need not address Plaintiff's remaining arguments. The Commissioner should not, however, construe the Court's silence as an indication that the ALJ's initial adjudication was appropriate as to the outstanding issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security (Dkt. 16) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 21) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

DATED: March 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

11